**In re AMERICAN EQUITY CORPORATION OF PINELLAS, Debtor.**

**No. 8:03–bk–23102–ALP.**

United States Bankruptcy Court, M.D. Florida, Tampa Division.

Oct. 4, 2005.

Janice N. Donica, Tampa, FL, for Trustee.

*ORDER DENYING CREDITORS' MOTION FOR SUMMARY JUDGMENT ON THE TRUSTEE'S OBJECTIONS TO CLAIM(S) NO. 4, 5, 13, 14, AND 18, AND DENYING IN PART AND GRANTING IN PART TRUSTEE'S MOTION FOR SUMMARY JUDGMENT ON TRUSTEE'S OBJECTIONS TO CLAIMS # 4, 5, 13, 14, AND 18*

**(Doc. Nos. 158 and 162)**

ALEXANDER L. PASKAY, Bankruptcy Judge.

THE IMMEDIATE matter under consideration in this Chapter 7 case of Amer-

ican Equity Corporation of Pinellas (Debtor), are two Motions for Summary Judgment. One is the Motion for Summary Judgment on the Trustee's Objections to Claim(s) Nos. 4, 5, 13, 14, and 18 filed by Creditors Mary Maranto, also known as M. Maranto for the benefit of Corey Dykes, William J. Rocco, Estelle Powers, Thomas and Sharon Rusche, as trustees for the Thomas James Rusche Living Trust and the Sharon P. Rusche Living Trust (the Creditors) (Doc. No. 158). The second is a Motion for Summary Judgment filed by the Trustee entitled: Trustee's Objections to Claims # 4, 5, 13, 14, and 18, and Memorandum in Opposition to Motion for Summary Judgment Filed by Mary Maranto f/b/o Corey Dykes, Claims 3, 4, and 5; William J. Rocco, Claim # 13; Estelle Powers, Claim # 14; and Thomas James Rusche and Sharon P. Rusche, Trustees of the Thomas James Rusche Living Trust and the Sharon P. Rusche Living Trust, Claim # 18. Said Motion for Summary Judgment is in Response to the Trustee's Objections to these Claims (Doc. No. 162).

This controversy revolves around the Trustee's objections filed to the following claims:

| CLAIM | FILED BY | AMOUNT | TYPE |
|-------|----------|--------|------|
| No. 4 | M. Maranto for the benefit of Corey Dykes | $ 4,000.00 | Secured |
| No. 5 | M. Maranto | $ 394,500.00 | Secured |
| No. 13 | M/M William Rocco | $ 400,000.00 | Secured |
| No. 14 | Estelle Powers | $ 702,154.00 | Secured |
| No. 18 | Thomas J. & Sharon P. Rusche, Trustees | $ 580,000.00 | Secured |

The parties contend that there are no genuine issues of material fact and that they are entitled to a judgment as a matter of law in their respective favors.

At the time relevant, the Debtor was in the business of investing money of various investors in promissory notes allegedly secured by deeds of trust and mortgages owned by the Debtor. The assignment of the mortgages and deeds of trust, and the promissory notes were not usually recorded by Ronald E. Clampitt, the President of American Equity.

However, the Creditors contend that the Debtor properly recorded assignments of a mortgage and a deed of trust on two properties, a motel/lodge in Haywood County, North Carolina, and a motel located in St. Petersburg, Florida. Based on these facts, as noted above, the creditors filed their proofs of claim. The Trustee filed objections to these claims on March 17, 2005, contending that these claims are not entitled to secured status, and only allowable as general unsecured claims. Both parties thereafter submitted Motions for Summary Judgment on the objections.

To place the issues raised by the parties' Motions in an understandable posture, a brief recap of legal and equitable titles to these properties should be helpful.

*Florida Property*

The Florida property mortgage has been liquidated and the balance of approximately $400,000 is being held in trust by the Trustee pending further order from the Court. It is without dispute that the collateral assignments given to the creditors were recorded in the public records in Pinellas County, the location of one of the motels involved.

*North Carolina Property*

On February 23, 1995, W. Dean Tomlinson, as trustee, conveyed his interest in the North Carolina property to Samuel A. and Mary Anne Baglier (the Bagliers). The deed evidencing the transfer was recorded on February 28, 1995, in the public records where the subject property was located. The Bagliers financed the purchase. The unpaid balance of the purchase price was secured by a deed of trust securing an outstanding balance of

$705,000, evidenced by a promissory note with a final due date of May 1, 2005. The deed of trust was given to Mr. Clampitt as trustee of a trust for which Mr. Tomlinson was the beneficiary. On the same date, the Bagliers executed another deed of trust secured by a promissory note for $65,000 with a final due date of January 1, 2001. The second deed was not collaterally assigned to the Creditors herein.

On March 14, 1995, Mr. Tomlinson collaterally assigned his interest in the deed of trust securing the $705,000 promissory note to American Equity. The assignment was made to secure various promissory notes dated from June 30, 1988 until August 17, 1990, owed by Mr. Tomlinson and was to remain effective until all of the monies under the notes were paid in full.

On September 5, 1996, or approximately one and one-half years after Mr. Tomlinson assigned his interest in the deed of trust to American Equity, the Bagliers conveyed their interest in the property back to Mr. Tomlinson by general warranty deed, which was recorded on September 12, 1996. The deed stated that it was subject to two existing deeds of trust encumbering the property for $705,000 and for $65,000.

On July 12, 1996, Mr. Clampitt, as president of American Equity, executed a Substitution of Trustee and appointed Marjorie R. Mann as trustee under the deed of trust given by the Bagliers to Mr. Clampitt as trustee with Mr. Tomlinson as the beneficiary.

On May 28, 1999, Mr. Clampitt, who listed himself as trustee on the document, collaterally assigned the Baglier deed of trust to American Equity. On the same date, he executed a collateral assignment of the same deed of trust in his capacity as president of American Equity to Arthur and Estelle Powers to secure a note dated March 31, 1999, for $95,000.

On July 25, 2000, Mr. Clampitt, listed once again as trustee, collaterally assigned the Baglier deed to American Equity. On the same date, Mr. Clampitt, as president of American Equity, executed a collateral assignment of the mortgage to Mr. and Mrs. Rusche to secure a note dated April 8, 2000, for $275,000. This assignment was recorded in the county where the property is located on July 27, 2000.

On June 22, 2001, Mr. Tomlinson, listed as trustee, filed a fee simple deed for the property to American Equity attorney G. Barry Wilkinson as trustee of Baltrust of NC, which listed that it was subject to any and all mortgages of record.

On January 22, 2002, Mr. Clampitt, as president of American Equity, executed a collateral assignment of the mortgage to American Equity Corporation of Pinellas, ITF Retirement Accounts, Inc., for the benefit of Mr. Rocco, to secure a note dated January 14, 2002, for $265,000. In addition to the Baglier deed of trust, this assignment included additional mortgages as collateral.

On July 26, 2002, Mr. Clampitt, as sole surviving director for A Action Mortgage Corp., collaterally assigned a mortgage made by Mr. Tomlinson dated June 30, 1988, to Ms. Maranto, for the North Carolina property. The parties do not address whether this assignment was ever recorded or the validity of the underlying mortgage. Furthermore, the assignment filed with the proof of claim does not include a stamp from the Haywood County Register of Deeds.

On September 9, 2003, the collateral assignment for Mr. and Mrs. Powers was recorded in the county where the property was located. On September 30, 2003, the collateral assignment for Mr. Rocco was recorded in the county where the property was located. The Bankruptcy Trustee ar-

gues that these assignments were delivered by Mr. Wilkinson to the attorney for Mr. Rocco, the Powers, and the Rusches without authority from American Equity and at a time when American Equity had begun defaulting on its obligations.

These are the facts which appear from the record, based on which the Trustee contends that the assignment of the mortgages and the deed of trust to the creditors are legally unenforceable and invalid due to the failure to properly perfect their interests in the subject properties. In addition, the Trustee contends that these assignments were delivered by the attorney Wilkinson to the attorney representing Rocco, Powers and the Rausches without authority from American Equity at a time when American Equity began defaulting on these obligations.

### THE DOCTRINE OF MERGER

■ Concerning the North Carolina property, it is the contention of the Trustee that when the Bagliers deeded back the property to Mr. Tomlinson in 1996, the title and the encumbrance on the property represented by the deed of trust merged, giving Mr. Tomlinson a fee simple ownership interest in the property.

The Trustee's argument that the equitable and legal titles to the property were merged, is supported under North Carolina law. *Smith v. Bank of Pinehurst,* 223 N.C. 249, 25 S.E.2d 859, 861 (1943). He also argues that even though the language in the deed is clear, the Court should look to the intent of the parties. Because of the foregoing, the Trustee argues that the Creditors only have an assignment of a satisfied Deed of Trust and so are unsecured creditors.

The difficulty in accepting the proposition urged by the Trustee should be evident when one considers that Mr. Tomlinson assigned his interest represented by the deed of trust securing the indebtedness of $705,000 on March 14, 1995. It was not until September 5, 1996, that the Bagliers deeded back the property to Mr. Tomlinson.

Based on the foregoing, this Court is satisfied that Mr. Tomlinson's interest in the deed of trust and the interest acquired by him when the Bagliers reconveyed the property to him, did not merge. Therefore, the theory of merger is not supported by the facts in this case and is without merit.

This leaves for consideration the ultimate contention by the Trustee that the claim of a secured status by these creditors is not supported by the facts and law due to the fact that, according to the Trustee, they failed to perfect their interest in the two properties involved in the present controversy.

### PERFECTION OF THE SECURITY INTERESTS

■ The Trustee argues that the Creditors are not properly perfected in their interests in the two properties under either Florida or North Carolina law because the promissory notes were not recorded with the assignments.

Under Florida Statute 701.02, an assignment is effective if it indicates that it is an assignment of a mortgage and is recorded. There is no dispute that the assignment documents recorded indicated that they were assigning a mortgage of the Florida property. In light of the foregoing, this Court finds that the Creditors properly recorded their interest in the Florida property.

With regard to the North Carolina property, North Carolina Statute 47–17.2 provides that for an assignment to be valid, it must be recorded with the promissory note. However, the Statute also provides

that the recordation of an assignment of a deed of trust without the promissory note does not impact the validity of the assignment of a deed of trust if it complies with the applicable law. There is nothing in this record to indicate that this practice is not permissible in North Carolina. For this reason, this Court concludes that the recordation of the collateral assignment without promissory note is valid and the argument of the Trustee that the failure to record the promissory note is fatal and renders the assignment of the deed of trust is unenforceable and is without merit.

### LACK OF DELIVERY OF PROMISSORY NOTES

■ The final argument addressed is the lack of delivery of the promissory notes which, according to the Trustee, is essential before a mortgage in Florida could be enforced. It is beyond peradventure that the mortgage is unenforceable unless there is an underlying obligation which a mortgage secures. In the present instance, this record is totally devoid of any evidence that the creditors were ever delivered the promissory notes in question or ever had possession of same. The only fact relevant which appears from the Affidavits is that the creditors are unable to produce the promissory notes in question.

Because these promissory notes are negotiable instruments, for a party to enforce a lost, destroyed or stolen instrument, it must comply with Florida Statute 673.3091. In interpreting this statute, a Florida court has held that the party must have had possession of the instrument before it was lost or received the right to enforce it from someone who had possession of it before it was lost. *State Street Bank and Trust Co. v. Lord,* 851 So.2d 790, 791 (Fla. 4th DCA 2003).

The Creditors have the burden of proof when moving for summary judgment. To support their motion, they submitted affidavits from all of the Creditors who asserted that they searched for the original promissory notes but were unable to find them. The affidavits do not state that the Creditors ever received the original promissory notes. Because there is no evidence that the Creditors ever had possession of the instruments, this Court finds that the Creditors cannot enforce them.

Accordingly, it is

ORDERED, ADJUDGED AND DECREED that Creditors' Motion for Summary Judgment on the Trustee's Objections to Claim(s) No. 4, 5, 13, 14, and 18 (Doc. No. 158) be, and the same is hereby, denied. It is further

ORDERED, ADJUDGED AND DECREED that Trustee's Motion for Summary Judgment on Trustee's Objections to Claims No. 4, 5, 13, 14, and 18, (Doc. No. 162) be, and the same is hereby, granted. The Trustee's Objection to these claims are sustained and the claims are disallowed as secured claims and can only be allowed as general unsecured claims.